Benedict *v.* Hecox.

---

BENEDICT & LOTHROP, impleaded, &c., *vs.* HECOX.

Where two persons are *sureties* for a third, the maker of a promissory note, and payment of the note is enforced from *one* of the sureties, in an action by him against the principal to recover the amount of the money so advanced, the other surety is a *competent witness* for the plaintiff. (a)

ERROR from the supreme court. *Hecox* sued *Benedict, Lothrop, Perine,* and *Collins,* survivors of one *John Drake, junior,* in an action of *assumpsit* for moneys

(a) See the case of *Gregory and Selman* v *Dodge and Green,* 14 *Wendell,* 593, in the court for the correction of errors, where the question as to the competency of a witness to charge third persons, and thus better his own condition where he has a remedy over, is fully considered by Chief Justice NELSON and Senator TRACY, and many of the cases referred to in the opinions delivered in this cause, and several others, examined and discussed. See also, *Lake* v. *Auborn and Hodgkins,* 17 *Wendell,* 18.

Benedict v. Hecox.

paid, &c. On the trial, he claimed to recover the amount of a note discounted at a bank, which he alleged he had signed as *surety*, and had been compelled to pay; and that the money obtained upon the note had been appropriated to the use of *all* the defendants. He produced a note dated 2d April, 1826, for $3000, payable 90 days after date, to the president, &c., of the Bank of Utica at their branch bank in Canandaigua, which was signed as follows: "John [491] Drake, jr.; William E. Perine, Sylvanus Lothrop, as surety; Samuel Hecox, Reuben Drake, as security." This note was not paid at maturity, but remained in the bank until the 5th of January, 1827, when it was taken up by a new note of the date last mentioned, for the same sum, payable in 90 days, which was signed as follows: "John Drake, jr.; William E. Perine, as security; Samuel Hecox, as security; R. H. Foster, security." This last note was paid by Hecox in February, 1828, after suit against him. *R. H. Foster, one of the makers of the last note, was called as a witness by the plaintiff* to prove admissions made by *John Drake, junior,* going to show that the money obtained upon the first note was appropriated to the use of a company or firm, composed of Drake and the other defendants in this cause; and he accordingly gave evidence to that effect, and also testified that he signed the note as surety, at the request of Drake. *It was objected that he was not a competent witness,* but the objection was overruled, and the defendants excepted. The bill of exceptions presented other questions; but the case is reported only in reference to the question of the competency of *Foster* as a witness. The defendants applied to the supreme court for a new trial on the bill of exceptions, which was denied by that court, and judgment rendered for the plaintiff on the verdict found in his favor. The defendants thereupon sued out a writ of error.

In reference to the competency of *Foster* as a witness, the following opinion was delivered by the now CHIEF JUSTICE:

" Without the testimony of Foster, I am inclined to think the verdict could not be sustained; for though there is considerable evidence tending to a similar result, there is none besides his that embraces the liability of all the defendants with sufficient precision and distinctness.

" It is said that he was an incompetent witness on the ground of interest. He certainly had no immediate interest in the event of the suit, though I admit he must have been inclined in favor of the plaintiff. It did not follow, if the defendants succeeded, that he would be made liable for the debt, or any [492] part of it. True, the plaintiff might call upon him for his share in the contribution among the sureties; and so he might after the recovery and until payment, as well as before. It may be said, however, that he could then resort to the judgment to reimburse himself. That is true; but he could also resort to the estate of Drake; that stood responsible to all the sureties. The witness must have a certain and direct interest, that is, he must gain or lose in the event of the suit, or become incompetent. This by no means followed here. The interest was remote; the recovery was only important to him upon two contingencies: 1. That Hecox would compel him to contribute; and 2. That the estate of Drake was unable to indemnify him. These both happening, the judgment would be important to him; if not, it was of no consequence. (*Phillips' Ev.* 54, 55. *Ridley* v. *Taylor,* 13 *East,* 175.")

The cause was argued in this court by

*S. Stevens,* for the plaintiffs in error.

*J. Van Buren,* for the defendant in error.

After advisement, the following opinions were delivered in reference to Foster's competency as a witness:

By the CHANCELLOR. I think that Foster was directly interested in the event of the suit, and was therefore an incompetent witness for the plaintiff. He had signed the note with the plaintiff and Perine as joint sureties for Drake, and was therefore bound to contribute at least one third, and one half if Perine was

Benedict *v.* Hecox.

insolvent, to repay to the complainant whatever money the latter had advanced out of his own funds to pay and take up the note; and the only right of action in this case is founded upon the supposition that the plaintiff had paid the note with his own funds, and not out of the estate of Drake, in his hands as administrator. If the plaintiff, therefore, succeeded in his suit against the surviving partners, he could not call upon the witness to contribute, without giv- [493] ing him the benefit of the judgment he had thus obtained, to enable him to remunerate himself therefrom. The cases of joint trespassers or other wrongdoers, which were referred to upon the argument, are entirely different; for there, each is liable for the whole, and cannot compel the others to contribute. One is therefore a competent witness for the plaintiff against another, because a recovery without actual satisfaction does not discharge his own liability; and if the plaintiff afterwards recovers against him, and obtains satisfaction for the whole injury, he is not entitled to the benefit of the judgment in the first suit, to make good any part of the amount for which he has thus been made liable. (*Geoghegan* v. *Reid,* 2 *Wheat. R.* 152.) The rule in relation to the competency of the witnesses is thus correctly laid down by the late Chief Justice Ewing, in the case of *Harwood* v. *Murphy,* (4 *Halst. R.* 216:) "The rule on this subject is clear and simple; it is only in the application that difficulty interposes. If the person offered as a witness, stands entirely indifferent as to the event, so that his interest cannot be in any degree affected by it, he is admissible. When it is said that the witness is admissible if equally interested, the same rule is stated, though in somewhat different terms: for he has then in truth no interest, inasmuch as being under equal responsibility, the event must be indifferent, or in other words, without interest to him. But where the responsibility will vary with the verdict, that is to say, where, if the verdict be for one party, the witness is exposed to certain responsibility, and if for the other party, he is liable to a different and lighter responsibility, then he does not stand indifferent, and ought not to be permitted to give evidence for the party whose success will leave him subject only to the lighter charge. If the liability of the witness remains the same, which ever way the verdict may be, he is indifferent. If, in one event, his liability is diminished, he is not a competent witness for that party and to produce that event." See also, *Buckland* v. *Tankard,* 5 *T. R.* 578.

Neither did the possibility that the estate of Drake might prove sufficient [494] to remunerate him, or that Hecox might not compel him to contribute as one of his co-sureties render the interest of Foster so remote and contingent, as to make him a competent witness for the plaintiff. In the ordinary case of special bail, the defendant may be and frequently is possessed of sufficient property to remunerate the bail for any sum he may eventually have to pay; and yet no one ever supposed that even positive proof of that fact would make the bail a competent witness for his principal to defeat the plaintiff's action. In the case of *Owen* v. *Mann,* (2 *Day's R.* 398,) a witness whose interest in the suit was equally balanced, if his remedy over against a responsible person in case the party calling him failed in the suit could make it equal, was nevertheless held to be incompetent.

As the law presumes every man will claim what is legally and equitably due to him, until the contrary is shown by a release of his right, the fact that it is possible he may not call upon the witness to make contribution when he has the legal right to do so, does not make the interest of the witness in creating another fund to relieve himself from liability, either remote or contingent, so long as his legal liability to contribute exists. To render him competent, on the ground that he has a remedy over, it should be distinctly shown that he has either a general or specific lien upon a fund for his indemnity, which is fully adequate to remunerate him for any thing he may lose by the failure in the suit of the party calling him as a witness. The exception to the decision of the circuit judge, in receiving Foster as a competent witness for the plaintiff, was therefore well taken.

### Benedict v. Hecox.

By Senator MAISON. The important and indeed the controlling question in this cause is, whether Reuben H. Foster was or was not a competent witness for the plaintiff. If he is held to be incompetent, then must this judgment be reversed. The material facts in this case, in support of the plaintiff's action, are proved by this witness; and the question is, whether Foster had not a direct interest in fixing the liability of the firm, which his testimony was intended in part to establish. As co-surety he undoubtedly would be liable to con- [495] tribute the one third of the amount due on the note, in case the money could not be collected from the estate of John Drake, jun., the principal in the note. Here, then, is the solvency of one man only, or of his estate, which is the only hope of Foster to be relieved from the necessity of contribution. By his testimony he is fixing the liability of four other persons as principals for the payment of his debt, thereby securing himself against loss, or at least removing farther from himself the probability of his ever being called upon to pay one cent. Is not this a direct interest? Is it not a present, immediate, and controlling interest? If it is not, I am incapable of understanding what kind of interest it is, to influence the mind, sway the judgment, or to pervert the understanding of a witness, which will render him incompetent on the ground of interest. It is true, as has been urged, that whether the plaintiff succeed or not, in fixing the liability of this company, the legal liability of Foster to contribute one third, in case of the insolvency of the estate of Drake, is not at all impaired; yet it is to be remembered, that in case the plaintiff succeeds in obtaining a judgment against the members of this firm, whether that judgment be enforced or not by Hecox, Foster would have a right to claim that judgment, and to enforce its execution to the extent of the moneys which, as co-surety, he shall pay. He is then, by his testimony, creating a security which before he had not, to respond or answer to him for the moneys he may be compelled or may be liable to pay; or in other words, he is procuring for himself an advantage which, by means of the judgment to be recovered, might result in a full, perfect, and unquestioned indemnification of himself.

But it is said that the interest of Foster is contingent—that it is contingent whether a recovery will be had, although he testify as a witness—it is contingent for that the plaintiff may never enforce the judgment against them—it is contingent, as it is not certain but that all of the defendants, against whom recovery is sought, may before execution issue become insolvent. The question is not whether the judgment, if recovered, will most certainly be enforced, [496] and the moneys collected thereon to the relief and indemnification of the witness, but it is whether the witness has not a direct interest in procuring the recovery, that the judgment may be enforced, and so operate to his relief. No rule is better settled, than that bail are incompetent witnesses, and will not be permitted to testify for their principal. (1 *Phil. Ev.* 49.) This is, most clearly, upon the ground that they have an interest to defeat the action, so as to remove from them the probability of being called upon to answer the amount sought to be recovered against their principal. But are there no contingencies in this? Is it certain that the testimony of the witness will defeat the recovery? Is it certain that if the recovery will be had, that the principal will not be able to pay it? It was well remarked in *Owen* v. *Mann*, (2 *Day's R.* 404,) "that a judgment against the principal is not necessarily accompanied with an obligation of payment upon the bail. The money may be collected of the principal, and the attempt must be made before the bail can be subjected." I cannot better express my views in this particular, than was done by Gibson, justice, in the case of *Conrad* v. *Keyser*, (5 *Serg. & Rawle*, 371.) After remarking that the general rule was, that to disqualify a witness, he must not merely have an interest in the question, but in the event of the suit; that is, where the verdict may be given in evidence for or against him in another suit, he adds : " Still there are many cases that are independent of this rule, in which the witness is excluded, although the

Benedict v. Hecox.

verdict could not affect him in another suit; of these, Mr. Phillips has, in his treatise, (p. 61,) given various examples  I would suggest, that wherever the verdict may create a new responsibility which the law would recognize and render available in favor of or against the witness, or increase or decrease an existing one, he ought to be rejected.  A contingent interest will not, I grant, disqualify, but it will not be considered contingent, merely because it is uncertain whether it will become operative.  To speak analogically, there must be an interest vested at the time, but the uncertainty of its ever taking effect in [497] possession is immaterial."  And indeed, in our courts, the rule that·a witness, to be incompetent, must gain or lose by the event of the suit, or the verdict can be given in evidence for or against him, is not considered absolute and without exception ; for in the case of *Van Nuys* v. *Terhune*, (3 *Johns. Cas.* 83,) the court, after laying down the rule as above mentioned, say : "We do not mean to say but that there may be some technical exceptions to the rule ;" and in *Stewart* v. *Kip*, (5 *Johns. R.* 258,) it was held, that "where the witness will gain an advantage by the evidence he may give, he must be excluded.  As respects the influence upon the mind of the witness, it is equivalent to a direct interest in the suit."  "The rule," say the court in *Butler* v. *Warren*, (11·*Johns. R.* 57,) "is stubborn and inflexible, that if a witness has a direct interest, how ever small, in the event of the cause, he cannot be admitted to testify upon the trial in favor of that interest, in any respect or degree."  (See also *Hubby* v. *Brown*, 16 *Johns. R.* 72 ; *Smith* v. *Bradstreet*, 5 *Cowen*, 214, 215 ; *Jackson* v. *Frear*, 16 *Johns. R.* 195.)

I will now advert to a few of the many cases in illustration of the principles as settled by the courts, having a direct and controlling influence in the decision of the question under consideration.  In the case of *Buckland* v. *Tankard*, (5 *T. R.* 578,) the action was by the endorsee of a bill of exchange against the acceptor. The bill was drawn on the defendant, and by him accepted to pay to Gregson or his order, and endorsed in blank.  Gregson was called as a witness by the defendant, to prove that the plaintiff had no property in the bill; that the bill was left with plaintiff to get payment thereof of the defendant; and not with intent to convey any interest to him; and was objected to, as an interested witness. Lord Kenyon, Ch. J., said : "The whole question turns on this, whether the witness' situation would or would not be bettered by the event of the verdict in this case.  I am still of opinion that it would ; for if the plaintiff should succeed, Gregson would be put to much greater difficulties to get back the money than if the plaintiff should be foiled by means of his testimony; and therefore, on the ground of interest, I·think the witness was properly rejected."  This [498] case, perhaps, goes farther than any in the books in exclusion of a witness on the ground of interest.  Lord Ch. J. Ellenborough, in *Birt* v. *Kirkshaw*, (2 *East*, 461,) said : "He knew of no other than this case, which goes on the ground of more or less difficulty in the witness in establishing his interest against one or the other of the parties."  Still, however, I do not understand that he questions the authority of the case ; nor is it necessary for us to sanction it here. It is only cited for the purpose of illustrating the general principle, and to show how far judges are willing to go in giving that principle a full and practical operation.

In the case of *Smith* v. *Bradstreet*, (5 *Cowen*, 215,) the plaintiff sued for compensation for services rendered as a commissioner in partition ; on the trial the co-commissioners were called as witnesses for the plaintiff, and though objected to, were permitted to be sworn.  On an application to the supreme court for ·a new trial for this cause, Mr. Justice Woodworth, in delivering the opinion of the court, said : "One commissioner was called to prove not only the services of his fellow commissioner, but the money paid for flag-men, &c.  The money thus paid by the plaintiff in this cause was a charge, for which the other commissioners were bound to contribute a proportion, for the money paid to the men employed

Benedict v. Hecox.

must be considered as paid for the benefit and assistance of all the commissioners, and from the nature of the trust, the employment must be presumed to have been by the assent of all. It follows, that Bartlet and Bostwick were interested in this part of the defence, for if the plaintiff succeeded by their testimony in recovering the disbursements, they thereby became exonerated. The commissioners proved a fact which they had a direct interest to establish." In support of this view of the law, the learned judge cites the cases of *Gage* v. *Stewart*, (4 *Johns. R.* 293;) *Butler* v. *Warren*, (11 *id.* 57;) *Marquand* v. *Webb*, (16 *id.* 92;) *Emeston* v. *Andrews*, (4 *Mass. R.* 653;) to which may be added, the case of *Owen* v. *Mann*, (2 *Day's R.* 399.) Now, in the case at bar it was contended, that though Hecox should recover against these defendants, yet is not Foster's liability to contribute as co-surety to the payment of the debt, in any [499] manner affected or impaired, and that his interest was remote and contingent; contingent upon a recovery being had by reason of his testimony, and contingent upon the collection of those moneys by execution upon the judgment, and that he was therefore competent. Precisely the same degree of remoteness and contingency of interest existed in the case last cited. It was contingent whether the plaintiff would recover a judgment by virtue of the testimony of the co-commissioners; and it was in like manner contingent whether, if judgment should be recovered, the moneys could be collected thereon. Yet did the supreme court in that case decide, that the co-commissioners proved a fact, which they had a *direct interest* to establish, and for that reason awarded a new trial.

The case of *Ransom, late sheriff of Niagara* v. *Keyes and Landon*, (9 *Cowen*, 128,) has a direct bearing on the matter under consideration. Hart and Lay had recovered a judgment against Keyes and Bronson, upon a note given by them as partners. Keyes had been arrested by virtue of a *ca. sa.* on that judgment, and gave to the plaintiff a limit bond signed by himself and Landon. Afterwards Keyes escaped from the limits, and this action on the bond was brought by reason of such escape. On the trial the defendants Keyes and Landon, called Bronson, the partner and co-defendant of Keyes in the judgment, as a witness. It was obvious that Bronson's testimony would go to defeat the plaintiff's recovery on the limit bond, if he testified to anything. The circuit judge decided the witness was incompetent on the ground of interest, and in this he was sustained by the supreme court. Justice Woodworth, who delivered the opinion of the court, said: " It seems to me the witness had a direct interest to defeat the recovery. He was equally liable for the debt. If the plaintiff recovered in this cause, such recovery with a consequent payment would extinguish all further claim arising in consequence of the judgment of Hart and Lay against Keyes and Bronson; admitting that after this recovery, Landon should pay the whole to the plaintiff, Keyes would be liable to Landon for the money paid. On his payment a right of action would accrue against Bronson for one half; but without [500] this a payment by Landon must be considered as a payment made by Keyes' procurement, for it would be made on a bond which Keyes had prevailed on Landon to execute for his benefit and enlargement. I do not perceive any material difference, therefore, whether Landon had advanced the money for Keyes when he was arrested, or subsequently paid it in consequence of a recovery on the bond he had given; as, between him and Keyes and Bronson, it was enough that the former had paid or caused it to be paid; nor could Bronson defeat a recovery against himself because satisfaction was made in the latter way." In this case also there are contingencies. It was contingent that the witness' testimony would weigh with the jury to defeat the plaintiff's action; it was also contingent whether Landon would ever pay any part of that judgment, or whether he had any property out of which the moneys could be raised on execution. Yet these were *not contingencies remote* enough in this case to admit this witness as competent.

Benedict *v.* Hecox.

The case of. *Marquand* v. *Webb and Webb,* (16 *Johns. R.* 80,) is not distinguishable in principle from the case at bar. On the trial of that case, in the mayor's court in New-York, the Webbs proved they had done certain repairs to the privateer Spitfire, and to show that Marquand was a part owner of the vessel at that time, called Benjamin Gomez, also a part owner, as a witness; he was objected to as incompetent, for being part owner, he was liable to contribution if the plaintiff recovered; but he was permitted to testify. On writ of error to the supreme court, he was held to be an incompetent witness. Spencer, J., who delivered the opinion of the court, said: " He was undoubtedly interested to render the burden upon himself as light as possible, and to throw it on the defendant in part." " The witness being confessedly, by his own admissions on the *voire dire,* a part owner, would be answerable in contribution, and his interest in making the defendant below an owner was promoted by increasing the number of those chargeable and thereby mitigating his own loss." " I have met," adds the learned judge, " no case directly in point. My opinion proceeds from the principle, that whenever a fact is to be proved by a witness, and such fact be favorable to the party who calls him, and the witness will derive certain advantage from establishing the fact in the way proposed, he cannot be heard, whether the benefit be great or small." And again : "It is conceived that Gomez did not stand indifferent between the parties; for though, from his own disclosures, he would be liable to the plaintiffs below, if they failed in this suit, as a part owner, he was increasing the number of those who would be contributory, and thus lessening the amount which he was eventually to pay." The learned judge, in the course of his opinion, remarked that " Bayley, J., in giving his opinion in the case of *Hudson* v. *Robinson,* (4 *Maule & Sel.* 475,) stated the true principle. He said a witness may be interested in different ways. If, · for instance, the result of the suit will be to protect him from having a demand made against him, or to put him in a better situation than before, he is an incompetent witness." This is in perfect harmony with the rule laid down in *Conrad* v. *Keyser,* (5 *Serg. & Rawle,* 371,) that " whenever the verdict *may* create a new responsibility in favor of or against the witness, or increase or decrease an existing one, he ought to be rejected." It is unnecessary to multiply cases on this point. It is to my mind most manifestly clear, that Foster had an immediate and direct interest in the event of this suit. If the plaintiff had failed, then would Foster have certainly been liable as co-surety for one third the amount of the debt; should the plaintiff succeed, as it was the interest of Foster he should, then would Foster have been entirely exonerated from his liability, or that liability considerably diminished, depending, it is admitted, upon the solvency of the firm, whose responsibility, in addition to his own, he was directly interested to charge with the payment of this debt. It is contended the judgment should not be reversed, although Foster may be considered an incompetent witness, as two other witnesses, Beard and Adams, testified to the same material facts testified to by Foster. It may be, for aught we can know, that the jury altogether confided in the testimony of Foster. Beard was a voluntary witness; he was not subpœnaed, and from his own story he gave information to the plaintiff, on the day of the trial of this cause before the circuit judge, 9th September, 1833, of the conversation he says Perine had with Welles, the cashier, in October, 1826, and that he had not thought of that conversation from that day to the day of his testifying; and he is contradicted by Welles in this, that Welles says he has no recollection of any conversation with Perine, as stated by Beard. The conversation as testified to by Beard, between Perine and Welles, was brought forward with the view of showing that Welles knew when this money was obtained from the bank, that it was for the use and benefit of the Ohio company; whereas Welles, in his first and second examination, expressly asseverates " that he never heard or understood that the note was discounted for the benefit of the company, or that the company ever had anything to do with the note or

Benedict *v.* Hecox.

with the avails;" " that he did not know or understand that the money obtained by Drake had gone or was to go to Ohio." In addition to this, *Beard*, at one time in his examination, says, " that Drake often said he expected the money before it did come," and he afterwards swears he did not so testify, but that he testified otherwise, to wit, " that Drake said he expected the money a great while before the pork came." And in further addition, the appearance and manner of the witness before the jury, may have induced them to lay aside his testimony altogether. The jury might also not have given any weight to the facts testified to by Adams, to wit, that Perine said the money obtained on the note was for the Ohio company ; for this conversation took place on the day of the commencement of this suit and long after the partnership was dissolved ; and the jury may have considered the confession or declaration of a partner, after the dissolution, as of no avail in this particular, and as irrelevant or improper, and they had sufficient legal warrant for so considering it, (*Hackley* v. *Patrick*, 3 *Johns. R.* 528 ; *Baker* v. *Stackpole*, 9 *Cowen*, 433 ; *Mercer* v. *Sayre*, *Anthon's N. P.* 119 ; *Hopkins* v. *Banks*, 7 *Cowen*, 650 ; *Walker* v. *Duberry*, 1 *Marshall's Ken. R.* 189 ;) and so have entirely disregarded his testimony. But whether the jury did or not alto- [503] gether or exclusively repose on the testimony of Foster, is of no importance, as it cannot vary or affect the rule, that a new trial will be awarded where an interested or incompetent witness has been admitted to testify before a jury, though there be cumulative testimony to the point from other witnesses. It has been so expressly held in the supreme court and in this court. (*Marquand* v. *Webb*, 16 *Johns. R.* 89 ; *Osgood* v. *The Manhattan Company*, 3 *Cowen*, 621.)

The supreme court in this case refused a new trial, and ordered judgment on the verdict. I am of opinion the judgment of the supreme court ought to be reversed, and that a *venire de novo* should be awarded. Having come to this conclusion on this point, it is unnecessary to examine the other points raised, as the decision on this, in my view, disposes of the whole case.

By Senator PAIGE. Was *Foster* a competent witness for the plaintiff below? It is objected by the defendants that he had a direct interest in securing a recovery for the plaintiff, and was therefore incompetent.

The general rule is, if a witness cannot gain or lose by the event of the suit, or if the verdict cannot be given in evidence for or against him in another suit, that he is competent. But an interest to render a witness incompetent, must be legal and fixed. A remote or contingent interest will not disqualify him. A witness may not only be sworn against his interest, but also in a case where his interest is balanced, and he stands indifferent as to the result of the suit. Will Foster gain or lose by the event of this suit? Upon the face of the note, he appears as one of three sureties for John Drake, jun., and therefore liable to contribute to Hecox one third of the amount of the note, if Hecox had paid it. If Hecox compels contribution from him, he has a remedy over for the whole amount of the contribution against the estate of Drake. Foster having a complete remedy against the estate of Drake, what interest has he in the success or defeat of Hecox in this suit. If Hecox recovers and obtains satisfaction from the defend- [504] ants for the whole debt, he cannot, to be sure, call upon Foster for contribution. But suppose Hecox fails, and turns round and exacts contribution from Foster, wherein is Foster the loser by this operation ? Cannot he immediately call upon the estate of Drake, which is responsible to all the sureties, and compel payment to him of the entire sum he was obliged to pay Hecox ?

What legal interest can it be to Foster whether Hecox recovers the whole debt from these defendants, or obliges him (Foster) to pay one third of the amount, and he (Foster) immediately receives the like amount from the estate of Drake? But even a recovery by Hecox in this suit is no extinguishment of Foster's liability to contribute, without a satisfaction. If Hecox, did not obtain satisfaction, and Foster by contributing one third, would be entitled to an assignment of the judgment *pro tanto*, so he could also resort to the estate of Drake for payment.

Benedict v. Hecox.

The circumstance, that by Hecox's recovery, he (Foster) would obtain the liability to him of five persons instead of one, in my judgment is of no importance, and does not make Foster interested, as no question is made of the solvency of the estate of Drake and of its abundant ability to respond to Foster. If that estate is abundantly able to respond, (and there is nothing in this case to show the contrary,) I cannot conceive any advantage Foster would gain by increasing his security. The supposition that the estate may by possibility prove unable to indemnify Foster, creates, if any, only a remote and contingent interest, which does not disqualify him. To make him incompetent, he must directly gain or lose by the event of the suit. How can he gain or lose when, whatever may be the result of the suit, (in the event of his being compelled to contribute to Hecox,) he has a perfect and certain remedy for a full indemnity against the estate of Drake. It is said that a witness having a claim over upon a third person for the same amount he is or will be liable to pay, is not by that circumstance rendered a competent witness in a suit, the event of which might [505] extinguish his liability. I apprehend this proposition cannot be sustained by authority. In the case of *Ridley* v. *Taylor*, (13 *East*, 175,) the witness was held competent, because he had a claim over upon a third person, not a party to the suit, for the amount of the debt he was or might be liable to pay. In that case, one of two partners drew a bill of exchange in the partnership name, and passed it to a separate creditor in discharge of his own debt. In a suit by such creditor against the acceptor of the bill, the innocent partner was held to be a competent witness for the acceptor, to disprove the authority of the debtor partner to give the partnership security, upon the ground that although the acceptor in case the separate creditor recovered against him, would have a remedy over against the firm, yet that the witness would also have his remedy over against the debtor partner ; and it was further held in that case, that the bankruptcy of the debtor partner in the mean time did not vary the question of competency. So in *McLeod* v. *Johnston*, (4 *Johns. R.* 126,) where D. and M. being indebted to C., the latter attached money in the hands of B., belonging to M. In a suit by C. against B. for the money, it was held that D. was a competent witness for C. ; for though the recovery would so far extinguish D.'s debt, yet he would be liable over for the same amount to M. So in *Chaffee* v. *Thomas*, (7 *Cowen*, 358,) it was held that a witness liable to lose by the determination of the cause against the party calling him, was a competent witness for him, if fully secured and indemnified against loss. Confining myself, then, to the liabilities and remedies of Foster as they appear on the second note, from the best consideration which I have been able to bestow upon this case, I have not been able to arrive at any other conclusion, than that he stands indifferent in point of interest as to the event of this suit, and cannot gain or lose thereby, and that he was therefore a competent witness for Hecox.

But there is another view which may be taken of this case, which, I think, will still more conclusively show the competency of Foster. Hecox and [506] Perine were both sureties for Drake on the first note, and were liable to the branch bank for its payment. When the second note was given, Foster, by signing the same as a surety, did not become a co-surety with Perine and Hecox, for Drake ; but he became their surety as well as a surety for Drake ; and all three, viz. Drake, Perine, and Hecox, stood to him in the character of principals, and consequently by the payment of the note by Hecox, Foster's liability was entirely extinguished. If so, then Foster has no interest whatever in this controversy, and there can no longer exist a question as to his competency. In *Craythorne* v. *Swinburne*, (14 *Vesey*, 159,) a bond was given by Henry Swinburne as principal, and Craythorne as surety, and Sir John Swinburne gave another bond reciting the former bond, and conditioned to be void on payment of the first bond by Henry Swinburne and Craythorne, or either of them. Henry Swinburne became insolvent, and Craythorne having paid the whole sum, filed a bill praying contribution by Sir John Swinburne. It was

### Benedict v. Hecox.

held by the lord chancellor, that Sir John was not a co-surety with Craythorne, but that Craythorne as to him was to be considered as a principal, and the bill was therefore dismissed. So in this case, if Hecox is to be regarded as a principal to Foster, then Hecox can never compel Foster to contribute towards the payment of any part of the debt, and consequently Foster was a competent witness in this suit. So in the case of *Harris* v. *Warner*, (13 *Wendell*, 400,) where A. signed a note as surety for another, and afterwards B. signed his name, and added thereto the words " surety for the above parties," and A. the first surety, paid the note, it was held that he could not compel contribution from B. unless it appeared B. intended to become a co-surety with A.

Therefore, under whatever view we examine this question of the competency of Foster, I am satisfied that the same result will be arrived at, viz., that he was a competent witness for Hecox on the trial of this suit, and was therefore properly received as such by the judge. My opinion therefore is, that the judgment of the supreme court ought to be affirmed.

On the question being put, *Shall this judgment be reversed?* the members [507] of the court divided as follows :

*In the affirmative:* The PRESIDENT of the Senate, the CHANCELLOR, and *Senators* MAISON, STERLING, TRACY, VAN DYCK, WAGER, WORKS—8.

*In the negative:* *Senators* ARMSTRONG, L. BEARDSLEY, BECKWITH, DOWNING, JOHNSON, LACY, LAWYER, LOOMIS, McLEAN, MACK, PAIGE, POWERS, SPRAKER, WILLES—14.

Whereupon the judgment of the supreme court was AFFIRMED.