MARGARET BUDD, Appellant and Respondent, *v.* STEPHEN
A. WALKER as Executor, etc., Appellant and Respondent.

*Court of Appeals, April* 16, 1889.

Reversing 47 Hun, 635, Mem.

1. *Statute of limitations.*—Where, in an action for an accounting for
   moneys entrusted to defendant's testator for investment, the only
   evidence presented was a letter from such testator to plaintiff,
   which acknowledged the receipt of the money and stated that it was
   drawing interest and that he would invest it, if he could find oppor-
   tunity, unless plaintiff should desire to use the money, the relation of
   the plaintiff to the decedent was that of simple contract creditor, and
   not that of a beneficiary under a trust; the amount was payable at
   once, and the statute of limitations then began to run; and the fact
   that it bore interest did not prevent the statute from beginning to
   operate.
2. *Contract. Special.*—The court or jury may infer a promise, where a
   relation exists between two parties, involving the performance of cer-
   tain duties by one and the payment therefor by the other; but, where
   a recovery is sought for the breach of an express, special agreement,
   such promise must be established by affirmative proof, or by evidence
   of its recognition in the acts or conduct of the parties.
3. *Same. Presumption.*—Where it appears that the supposed debtor was,
   at all times during his life, able to pay, and so in the habit of paying
   his debts that at his death his estate was left unencumbered, and that
   during much of the same time the creditor was, if not in pecuniary
   embarrassment, at least contending with a limited and narrow income,
   it cannot, after the death of the former, be presumed, upon doubtful
   evidence, that the latter was constantly discharging joint obligations,
   trusting to the dilatory repayment of the co-obligor. The presump-
   tion in such case is that the latter's ready money payments were
   made upon his own, and not upon joint, account.
4. *Same.*—Where the contract, alleged as the foundation of a claim for
   support, maintenance and lodging, is, in any reasonable view of the
   evidence, utterly unproven, and there is evidence that no agreement
   of a pecuniary nature relating to the claim was ever made or con-
   templated by the parties, and the facts are only consistent with a volun-
   tary and satisfying beneficence, the circumstances of membership
   in plaintiff's family on intimate and familiar footing, etc., taken in

themselves or in connection with any other facts in the case, are insufficient to create a cause of action.

Appeal from a judgment of the general term affirming a judgment of the special term.

*Charles E. Miller,* for appellants.

*William G. Wilson,* for respondent.

DANFORTH, J.—The action is for an accounting, because (1), as the complaint states, on the 22d of January, 1859, the " plaintiff intrusted to " the defendant's testator " $953.72, which sum the testator shortly thereafter informed her he had invested for her at seven per cent. per annum." A like statement is made in the complaint as to a further sum of $1,000, said to have been intrusted to him on or about April, 1867. But no further notice need be taken of this item, for it does not appear to have been allowed to the plaintiff nor is it the subject of consideration by either party upon these appeals. (2)—Because, " on or about September, 1866, the testator took up his residence with the plaintiff in the house then occupied by her, being No. 29 West Thirty-third street, in the city of New York, and continued there until the month of August, in the year 1870, when said testator and the plaintiff removed from the house to No. 164 Fifth avenue, where they resided until the time of the death of said testator (in March, 1881). That during all the period from said September 1, 1866, down to the time of his death, the said houses were successively occupied, kept up and maintained for the joint benefit and joint account of said testator and said plaintiff, and with the agreement between them that said testator should bear, pay, and contribute his own proper share or proportion of the expenses of the same, in consideration of the benefit and advantage derived by him therefrom." The answer admits that the plaintiff and the testator, at the time of his death, and for a long time prior thereto, resided at the house last

named, No. 164 Fifth avenue, but denies the other allega-
tions going to make up any cause of action, and as affirma-
tive matter sets up the statute limiting actions upon
contract to six years after the right of action accrued.

At special term the trial judge found that Smales had no
family, and that from a time prior to 1866 the plaintiff
and Smales, until about two weeks before his death, occu-
pied the premises mentioned in the complaint, and that
they were "kept up and maintained for the joint benefit of
the plaintiff and testator Smales, and upon and under an
implied agreement and understanding between them that
the said testator should bear, pay and contribute his own
proper share or proportion of the same, in consideration of
the benefit and advantage to be derived and which was de-
rived by him therefrom;" that if not the whole, a large
part of the money necessary for that purpose was expended
by the plaintiff; and as conclusion of law that she was en-
titled to recover of the defendant "the one-fourth part of
such expenses." Upon the first cause of action the trial
judge found in favor of the plaintiff as to $953.72, and
directed an accounting concerning those moneys, and also
concerning the expenses already referred to. Upon such
accounting the defendant was charged, under the first cause

| | | |
|---|---:|---:|
| of action, as for cash delivered to the testator, | $ 953 | 72 |
| With interest . . . . . . . . . . . . | 1,809 | 57 |
| And one-quarter of the rental value of prom-<br>ises No. 164 Fifth avenue, from August 1,<br>1870, to March 1, 1881, at $4,000 per annum. | 10,586 | 66 |
| | $13,349 | 95 |
| He was credited with various items in favor of<br>his testator, amounting to . . . . . . . | 6,925 | 52 |
| A judgment rendered against him for the bal-<br>ance, viz.: . . . . . . . . . . . . . | $6,424 | 43 |

Both parties appealed. The plaintiff, because additional

sums amounting to $16,520.80, and hereinafter referred to, were not allowed as charges against the testator, and the defendant appealed against any allowance either on the first or second cause of action. The general term affirmed the judgment.

The plaintiff's appeal presents no question of law. The rejection of the items claimed was because of insufficient evidence, and we are clearly of opinion that the courts below should have gone further and denied to the plaintiff any recovery whatever. As to the first cause of action its only support is a paper produced by the plaintiff in the handwriting of the testator and running thus:

"NEW YORK, *January* 22, 1859.

"*Dear Mrs. Van Kleeck:*

"I have this day received from Mrs. Meinell, on your account, six hundred and fifty-three dollars, seventy-two cents ($653.72), which, together with the three hundred dollars ($300) you deposited in my hands about the 1st September last, are now drawing interest at the rate of seven per cent. If I can find an opportunity of purchasing a mortgage, such as I mentioned to you, whereby I can without risk secure a greater profit, I shall do so, unless you wish to make any other use of the money. Should you desire to use it, please let me know.

"H. SMALES."

Mrs. Van Kleeck, to whom the letter is addressed, became in 1862, by marriage, Mrs. Budd, and is the plaintiff. In 1859, Mrs. Meinell was in New York and the plaintiff was in Europe. The transaction appears to be explained in a letter dated January 2, 1859, written by Smales to the plaintiff, and in which, referring to Mrs. Meinell, he says, "She mentioned your having requested her to hand me the amount of some commissions executed for her in Paris, and that she should do so as soon as they are completed, and I told her I supposed you would send me some directions on

the subject." Both letters were written by him in New York, and sent to her in Paris by mail. The letter and its recitals are of course evidence between the parties of the facts recited. It therefore appears that in September, 1858, the plaintiff deposited with the testator $300, and that on the 22d of January, 1859, he received on her account $653.72, and that both sums were bearing interest at the rate of seven per cent. The money was subject to her order and to any use she might choose to put it from that moment. So the letter states, and such would be the implication if there were no statement. As to the decedent, her relation was that of a creditor upon a simple contract and not that of a beneficiary under a trust. He was at once liable to pay as debtor, whether he became such in his character as attorney, collecting money for his client, or whether by transmission from her he received it as her agent. There is no evidence that either sum was placed in his hands for investment. He does, indeed, suggest the purchase of a bond and mortgage, "if the opportunity was found," but not then even if the plaintiff wished " to make any other use of the money," and as to that he asked to be informed. It does not appear that such information was given. The testator did not constitute himself a trustee, or express an intention to become one, and the relation between the parties as to the money in his hands is to be implied from the mere fact that the money belonged to the plaintiff. He assumed no duty, nor was he requested to assume a trust.

There are no words showing that the money was so taken, nor any evidence that the plaintiff desired an investment, or in any way assented to his suggestion; but if the contrary should be assumed, that his suggestion to put the money out on bond and mortgage had been accepted by the plaintiff, the presumption would be that in accordance with the duty thus imposed, the instrument would be taken in her name, and there is no claim that he made any in his own name or took security to himself. The letter is a mere

admission of the receipt of the money mentioned in it. It was payable at once, and the fact that it bore interest did not prevent the statute of limitations from beginning to operate. Wenman *v.* Mohawk Ins. Co., 13 Wend. 267. Its passage as to either item was not obstructed. That statute was, we think, an answer to the first cause of action.

*Second.* The pleader, in stating the first cause of action, made no averment of an agreement, but left that to be implied from the facts stated. In setting out the second cause of action an express contract is alleged, not indeed as to the proportion which the testator should pay, but that he would pay " his own proper share or proportion of the expenses " of the joint occupancy of the houses. Such a promise is somewhat illusory, for it is difficult to determine with any certainty in what sense the parties understood it, but as a promise it at least requires affirmative proof to establish it. Williams *v.* Hutchinson, 3 N. Y. 312.

A relation may indeed exist between two parties, involving the performance of certain duties by one and the payment therefor by the other, and in such a case the court or jury may infer a promise by each party. As in the case of an inn or boarding-house keeper, whoever avails himself of the accommodations furnished by such a person will be held bound as by a promise to pay for them. The plaintiff was neither an inn-keeper nor boarding-house keeper; she had no relation toward the public which could be construed into an invitation to them to occupy her premises, or from which one occupying them could be charged as upon a promise to pay therefor. Nor does the complaint go upon that ground; it is indeed expressly disclaimed by the plaintiff's counsel. " The plaintiff," he says, " never kept a boarding-house or took boarders." A recovery is sought as for the breach of an express special agreement between the testator and the plaintiff. No such agreement is found by the trial court; none such is in evidence.

An agreement and understanding on the testator's part is

implied by the court to pay a proper share of expenses for a certain purpose, and the court finds a proper share to be one-fourth of the whole. I can find no evidence to warrant either implication. The plaintiff was a married woman, and the trial court finds that the testator, prior to the year 1866, took up his residence with her and her husband "in the house then occupied by them and their respective children, being No. 29 West Thirty-third street, in the city of New York, and continued there until about the year 1871, when the said plaintiff and her husband and their children removed to the house No. 164 Fifth avenue, New York city, and that said testator, Holbert Smales, accompanied them to the said house, and thenceforth resided with the plaintiff and her husband until the husband's death in 1871, and thereafter with the said plaintiff until a few weeks before his (Smales') death."

Circumstances might indeed prevent the production of proof of an express promise, although one existed. The death of one party closed the mouth of the other. But if there had been an understanding or agreement in regard to compensation, or to mutual bearing of expenses, at fixed rates or in a certain proportion, we should expect to see some evidence of its recognition in the acts and conduct of the parties. The circumstances created by the plaintiff, and the ordinary dealing by her with the matter in which, according to her present claim, she had no individual interest, but merely a joint or partnership interest with the testator, however critically examined, fail to disclose a consciousness on her part that such participation existed.

The learned referee who received the testimony and stated the account, which resulted favorably to the plaintiff, was constrained to find that during the period involved in this inquiry "she kept no account of the expenditures of the household;" no account, at any time, of any transactions in which the testator was concerned. Moreover, he found "that most of the memoranda of the expenditures of

the said household which came into the possession of the said plaintiff, consisting of receipted bills of expenses incurred in the maintenance of the said household, passbooks, etc., were voluntarily destroyed by her. That she voluntarily destroyed most of the written evidence that there was in her possession relating to the expenses of the said household, and that she destroyed some of it before the death of the decedent, Holbert Smales, and some of it subsequent to his death. That at the times when the said plaintiff destroyed the said written evidence concerning the said expenditures, she did not know or believe that there was anyone except herself who was interested in the expenses of the said household." Yet, notwithstanding these findings, there was allowed to her, as against the testator, one-quarter of an assumed amount of household expenses and matters connected therewith, from January 1, 1864, to March 1, 1881.

It is to the disallowance, under the direction of the general term, of these items, amounting, as charged to the defendant, to upwards of $16,000, that the plaintiff appeals. There are, indeed, many circumstances showing the claim now made to be an afterthought: There are others, doubtless, from which it is apparent that the testator received benefits from the plaintiff, but we find nothing to indicate an agreement for compensation, nor any fact in the course of their correspondence or dealings to raise even a serious suspicion that one existed. As he received, so he bestowed benefits, and there may have been on the plaintiff's part an expectation of greater. The testator may have excited or encouraged it, but disappointment on one side does not impose an obligation on the other, and the conduct relied upon by the plaintiff as constituting an actual engagement is too ambiguous to create a right of action.

The claim allowed for a portion of the rental value of the premises occupied by the plaintiff has no better foundation than the claim disallowed for a like proportion of the house-

hold expenses. It is true the gross rental value has not been rendered indeterminate by the act of the plaintiff, but that is unimportant, so long as there is no proof of an effectual promise to pay either. Of course, the right of a creditor does not depend on the circumstances of the debtor, but where it appears that during his life the supposed debtor was at all times able to pay, and so in the habit of paying his debts, that at his death his estate was left unencumbered, and that during much of the same time the creditor was, if not in pecuniary embarrassment, at least contending with a limited and somewhat narrow income, it cannot, after the death of one, be presumed upon doubtful evidence that the latter was constantly discharging joint obligations, trusting to the dilatory repayment of her co-obligor. The presumption would be the other way, that her ready money payments were upon her own account, and not upon joint account.

It is not necessary to decide that no obligation of any kind existed on the part of the testator. The evidence of the plaintiff's son is that in October, 1876, the testator acknowledged that he owed the plaintiff " a considerable amount, more than he could then pay," and desired the settlement to be postponed to the then coming " first of the year," but what it was for, or to what the testator referred, the witness did not know. He made no claim, nor can it be implied that there was in the mind of the testator any such relation as that upon the assumed existence of which the present action is founded. Whether credited by the referee or not, it is therefore unimportant. It is sufficient for the present purpose to say that the contract alleged as the foundation of this cause of action, in any reasonable view of the evidence, is utterly unproven. There is also evidence indicating that no agreement of a pecuniary nature relating to support, maintenance or lodging was ever contemplated by the parties. Between the plaintiff and the testator there were no relations of kindred, near or distant, yet it is evident that he entered her family circle as

one of its members and he was so received and treated.

During the plaintiff's widowhood as Mrs. Van Kleeck, in 1855, he occupied the same house with her in Twenty-third street, and he was, as his letters written at different times state, "sincerely and affectionately" attached to her ; her regard for him was co-existent, and his interest in her children was manifested from their infancy onward, and his love for them found frequent expression in his letters.

When separated, he writes to her : " The only home I anticipate in this world is with you." And after her marriage to Mr. Budd, she writes on May 7, 1867, from Paris : " You can't even imagine the interest, I may say affection, that Mr. B. has for you ; it is, I need not say, very gratifying to me, and if agreeable to you, think you had better take up your abode with us altogether."

He became a member of their household and lived with them on intimate and familiar footing, so much so that one of the plaintiff's friends, a frequent visitor, a witness for her on this trial, formed, from her opportunities of observation and hearing, as early as 1869, the belief that the decedent was the plaintiff's uncle. Smales was unmarried. His immediate relatives were in England, and he was understood to be a man of considerable property.

No evidence of any promise on his part to make a testamentary disposition of it in favor of the plaintiff, or her family, is proven, but it does appear that it was the subject of conversation among other members of the household, and she herself says: " I hardly know how to answer the question as to whether I have ever stated to other people than Mr. Smales the expectation of myself or any of my family receiving any money from Mr. Smales at the time of his death ; some of my family would ask me questions occasionally as to his position, and supposing Mr. Smales a man of honor and that he would do as he said, I certainly expected a liberal reward."

Whether the circumstances relied on by the respondent

are to be accounted for by such expectation, it is not neces-
sary to debate.  In themselves or in connection with any
other facts in this case, they are insufficient to create a cause
of action and they are consistent with an expectation of a
voluntary and satisfying beneficence.

We find no ground on which the judgment appealed
from can be supported.  It should, therefore, be reversed
and a new trial granted, with costs to abide the event.

All concur, except RUGER, Ch. J., not voting.